**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES JONES,

Plaintiff,

v.

VILLAGE OF SOUTH BARRINGTON,
a municipal corporation, and
UNKNOWN SOUTH BARRINGTON
POLICE OFFICERS,

Defendants.

Case No. 1:25-cv-10084

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff James Jones sues, under 42 U.S.C. § 1983, two unnamed police officers ("Defendant Officers") and the Village of South Barrington ("the Village"). In Count I, Jones alleges that Defendant Officers used excessive force in arresting him, violating his Fourth Amendment rights. In Count II, Jones alleges that the Village's policies or customs was the moving force behind his injuries under *Monell*. Before the Court is Defendants' motion to dismiss. [10]. For the foregoing reasons, the Court denies the motion as to Count I and grants the motion as to Count II.

## Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank*

1

*Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *See Lax v. Mayorkas,* 20 F.4th 1178, 1181 (7th Cir. 2021). However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### Background

The following factual allegations taken from the operative complaint [1] are accepted as true for the purposes of the motion to dismiss. *See Lax,* 20 F.4th at 1181.

2

On or about August 25, 2024, Jones was eating dinner with his family when John Doe Defendant Officers from the South Barrington Police Department arrived and asked him questions about where he was earlier that day. [1] ¶¶ 7-8. Defendant Officers said that they were investigating a complaint that someone was following another person at the Arboretum shopping center in South Barrington. *Id.* ¶ 8.

Defendant Officers asked Jones where he was at about 5:50 p.m. *Id.* ¶ 9. Jones responded that he had been at home since 5:30 p.m. *Id.* ¶ 10. Defendant Officers then told Jones that someone identified him as a person who was being publicly indecent in his car. *Id.* ¶ 11. Jones told the Officers that he was handicapped due to a back injury. *Id.* ¶ 12. He also told them that he went to the bank at the Arboretum and then drove home. *Id.* ¶ 13. Defendant Officers told Jones that they were going to arrest him. *Id.* ¶ 14. While arresting Jones, he told Defendant Officers a second time that he was disabled due to a back injury. *Id.* ¶ 15. John Doe Officer No. 2 remarked that Jones did not look handicapped. *Id.* ¶ 16. John Doe Officer No. 1 used both hands to push Jones back from the front door. *Id.* ¶ 18. Officer No. 2 grabbed Jones on his upper arms from the back, preventing him from using his arms. *Id.* ¶ 19. Jones told him not to grab him like that because of his back injury. *Id.* ¶ 20. Officer No. 2 did not release Jones. *Id.* ¶ 21. Defendant Officers then forced Jones into a sitting position so that he could put on his shoes. *Id.* ¶¶ 22-23. During the interaction, Officer No. 1 stated that he did not want Jones to get hurt over something "silly like this" and that the complainant had identified him *Id.* ¶ 24. According to the Complaint, this was not true; the person did not identify Jones as the perpetrator. *Id.* ¶ 25.

Plaintiff alleges that Defendant Officers' deliberately indifferent conduct was the direct and proximate cause of his injuries, which were the result of the Village's failure to implement policies, practices and procedures to ensure that disabled arrestees received appropriate attention to their disability once officers are informed. *Id.* ¶ 31.

On October 27, 2025, Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [10].

## Discussion

### A. Plaintiff states a plausible claim of excessive force

Defendants argue that the alleged conduct is consistent with standard arrest procedures and therefore cannot be considered excessive under the Fourth Amendment. [11] at 3-6. Plaintiff responds that utilizing minimal force when the plaintiff is physically disabled or injured could be considered excessive force. [13] at 3-5. At this stage of the proceedings, the Court agrees with Plaintiff.

Excessive force claims against law enforcement officers are analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest[,] the officer uses greater force than was reasonably necessary to effectuate the arrest." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir.

4

2012)). Courts consider three factors in the analysis: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (quoting *Graham*).

Even a minimal use of force that harms the arrestee "when no force was needed at all," has been determined to constitute excessive force. *Tennen v. Shier*, No. 94 C 2127, 1995 WL 398991, at *6 (N.D. Ill. June 30, 1995); *see also Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 725 (7th Cir. 2013) (the Fourth Amendment prohibits the use of greater force than necessary to make arrests). Moreover, reasonable force "may be objectively unreasonable when the officer knows of an arrestee's medical problems." *Stainback*, 569 F.3d at 772.

"[A] person has the right to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury." *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) (citing *Stainback* and *Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2003)). Handcuffing an arrestee can be excessive when officers fail to accommodate injuries that were made known to them. *Butts v. Smiles*, 2018 WL 1513648, at *4 (C.D. Ill. Mar. 27, 2018).

Turning to the first factor, severity of the crime, Jones was allegedly accused of "following another person" at a shopping center and "being publicly indecent" in his car. He was not alleged to have injured or threatened anyone. As to the second factor, threat to safety, here there was no indication that Jones posed a threat to

anyone: (1) Plaintiff was at home with his family eating dinner when the police arrived, (2) he was not armed, and (3) he cooperated by getting his shoes in order to go to the police station. Turning to the third factor, resisting arrest or flight risk, according to the complaint Jones gave no indication that he would resist arrest or attempt to flee. At this stage of the litigation, all three factors weigh in favor of allowing Plaintiff to proceed on a claim of excessive force.

In addition, Jones told the Defendant Officers of his back injury, so they knew that he was susceptible to pain upon handcuffing. Because the Defendant Officers knew that Jones had a back injury, even minimal force could be considered unreasonable. *See Butts,* 2018 WL 1513648, at *4 (denying summary judgment because "what would have been otherwise reasonable conduct—placing an individual in handcuffs with their arms behind their back following an arrest—became less reasonable when Officer Smiles knew that Butts had just received significant medical treatment for multiple lacerations on his forearms."). Defendants cite *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) for the proposition that Defendant Officers acted objectively reasonable. Of course, the *Tibbs* court had the benefit of discovery as the matter was decided on summary judgment. In *Tibbs*, the plaintiff, arrested on an outstanding warrant for a traffic violation, complained that his handcuffs were too tight. The Seventh Circuit affirmed summary judgment where "Tibbs complained only once to [the arresting officer], gave the officers no indication of the degree of his pain, experienced minimal (if any) injury, and sought no medical care." *Tibbs v. City of Chicago,* 469 F.3d 661, 666 (7th Cir. 2006). By contrast, the officers here used both

6

hands to push Jones back from the front door and grabbed Jones on his upper arms from the back, preventing him from using his arms—despite Jones asking them not to grab him like that because of his back injury. They also forced Jones into a sitting position so that he could put on his shoes. John Doe Officer No. 1 even said that he did not want Jones to get hurt over something "silly like this". At this stage of the proceedings, that is enough to state a cause of action.

Accordingly, the motion to dismiss is denied as to Count I.

**B. Qualified Immunity is premature at this stage**

Defendants argue that even if Plaintiff has alleged a constitutional violation, Defendant Officers are entitled to qualified immunity. [11] at 6-7. Plaintiff responds that it was clearly established that excessive force violated Plaintiff's constitutional rights, and qualified immunity does not apply. [13] at 6-7.

To defeat a qualified immunity defense, a plaintiff must plead facts that show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal citation omitted).

Plaintiff plausibly alleges that the Defendant Officers engaged in excessive force. At this stage, that is all that is required. *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2001) (noting plaintiffs are "not required to initially anticipate and overcome a defense of qualified immunity" in their complaint); *see also Hanson v. Levan* 967 F.3d 584, 589-90 (7th Cir. 2020) ("dismissal under Rule 12(b)(6) is appropriate based on qualified immunity *only when* the plaintiff's well-pleaded

allegations, taken as true, do not state a claim of violation of clearly established law.")
(emphasis added) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996)) (internal
quotations omitted). The right to be free from excessive force has been clearly
established since prior to the arrest in this matter. Moreover, the question is often a
fact intensive one.

In *Reed v. Palmer,* 906 F.3d 540, 548-49 (7th Cir. 2018), the Court reversed the
district court's grant of qualified immunity at the motion to dismiss stage reasoning
that "a complaint is generally not dismissed under Rule
12(b)(6) on qualified immunity grounds" because the pleadings rarely develop a
robust enough factual record to do so. It would be premature for the Court to
grant qualified immunity where the record is not fully developed. At this stage,
Plaintiff's allegations are enough. However, this does not prevent the Defendant
Officers from reasserting and further developing their affirmative defense.

Accordingly, the federal claim against Defendant Officers may proceed.

### C. Plaintiff's *Monell* Claim is dismissed

Defendants argue that Plaintiff's *Monell* claim fails because he did not allege
facts beyond those of his own arrest. [17] at 7. Plaintiff responds that Defendants
admit that their conduct was routine, showing a widespread practice under *Monell*,
and that the Village's failure to train amounted to deliberate indifference of the rights
of persons with whom Defendant Officers came into contact with. [13] at 8-10.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)
established government liability when "execution of a government's [own] policy or

custom [. . .] inflicts the injury." *Monell*, 436 U.S. at 694. Plaintiff must allege that "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury." *Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005).

The second requirement can be satisfied by "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). For *Monell* liability to attach under the widespread practice theory, it is well established "'that the practice [must be] widespread and that the specific violations complained of were not isolated incidents.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 525 (7th Cir. 2023) (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)). "Allegations of 'a few sporadic examples of an improper behavior' will not suffice." *Thomas*, 74 F.4th at 525 (quoting *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021)); *see also Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) ("Both in the 'widespread practice' implicit policy cases and in the cases attacking gaps in express policies, what is needed is evidence that there is a true municipal policy at issue, not a random event."). Plaintiff has failed to allege a widespread practice under this theory since he relies only on his own experience. Indeed, the only instance

9

alleged is his own, which falls below *Monell* pleading standards. *See Thomas*, 74 F.4th at 525. ("At bottom, Thomas's allegations of two isolated incidents fail to plausibly allege that the District has a widespread practice of using excessive force to punish students with behavioral disabilities. Accordingly, she has failed to state a claim under *Monell*.").

A public entity may be held liable under *Monell* for *failure to train* where inadequate training "amounts to deliberate indifference to the rights of persons with whom the [employee] come into contact." *Flores*, 997 F.3d at 731 (7th Cir. 2021) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)) (internal quotation marks omitted). Moreover, failure to train "liability does not require proof of widespread constitutional violations before that failure becomes actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Id.*

While a single incident can trigger liability, the Supreme Court has stated that "a pattern of similar constitutional violations by untrained employees is *ordinarily necessary* to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (emphasis added) (citations omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 536 U.S. at 62. "What separates [failure to train *Monell*] liability from traditional *respondeat superior* liability is a known pattern of tortious conduct

10

demonstrating the need for additional training, rather than one-time negligen[ce]." *Flores*, 997 F.3d at 731 (citing *Harris*, 489 U.S. at 407-08); *see also Connick*, 563 U.S. at 70 (explaining that a failure to train theory "must adhere" to a "stringent standard of fault lest municipal liability under § 1983 collapse into *respondeat superior*."). "Liability under the single incident theory remains rare." *Flores*, 997 F.3d at 736 (J. Hamilton concurring) (citing *Connick*, 563 U.S. at 64.)

Because Plaintiff has not alleged any other instance besides his own, his allegations must rely on a failure to train theory. That requires him to plausibly allege the (rare) possibility that the Village's failure to train on the proper use of force during an arrest led to patently obvious unconstitutional consequences. The Court finds that the conclusory allegations here—because John Doe Officers No. 1 and No. 2 were excessively forceful in their handling of Plaintiff who had a back injury, the Village failed to train its officers on use of force—do not plausibly allege a patently obvious unconstitutional practice. The Court dismisses Count II without prejudice.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss [10] is denied in part and granted in part. The discovery stay is lifted. The parties are to file a joint status report by 5/13/26 with a proposed fact discovery schedule. The parties are to describe an expedited schedule to conduct discovery into the identity of the John Doe Officers.

E N T E R:

Dated: May 1, 2026

MARY M. ROWLAND

United States District Judge

12